## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

**CHATEL GRAYSON**
6408 Gilmore Street
Baltimore, MD 21207

      *On her behalf and on behalf of*
      *four classes of similarly situated*
      *persons*

      Named Plaintiff,

v.

**FREEDOM MORTGAGE**
**CORPORATION**
907 Pleasant Valley Drive
Mount Laurel, NJ 08054
<u>**SERVE ON:**</u>
The Corporation Trust, Incorporated
2405 York Road, Suite 201
Lutherville-Timonium, MD 21093

      Defendant

Case No. _____

**CLASS ACTION COMPLAINT**
**&**
**REQUEST FOR JURY TRIAL**

Plaintiff Chatel Grayson ("Ms. Grayson" or "Named Plaintiff"), through her undersigned

counsel file this Class Action Complaint pursuant to MD. RULE 2-231, on her individual behalf

and on behalf of three classes of similar persons against Defendant Freedom Mortgage Corporation

("Freedom"), and says in support:

### I.   INTRODUCTION

1

1.          Freedom knowingly improperly assessed certain loan charges against the mortgage

loan accounts of Ms. Grayson and the putative class members she represents as part of its

regular and routine mortgage servicing and lending practices in the State of Maryland.

2.          Specifically, Freedom has charged Ms. Grayson's and the putative class members'

mortgage accounts with fees and other charges related to property inspections, payments

by telephone, and requests for payoff statements which Maryland law expressly prohibits.

3.          As a result, Freedom's actions have unlawfully and knowingly infected Ms.

Grayson's and the putative class members' mortgage accounts by wrongfully demanding

costs it is not entitled to collect.

4.          Since these unlawful fees are included in (i) pay off demands (on its own behalf

and on behalf of others), (ii) Freedom's sworn testimony in state court actions to foreclose,

and (iii) periodic statements sent by Freedom, the sworn testimony, payoff demands and

periodic statements advanced by Freedom to Ms. Grayson and the putative class members

are not accurate.

5.          Maryland law specifically provides that "a lender may not impose a lender's

inspection fee in connection with a loan secured by residential real property." COM. LAW

§ 12-121(b). *See also Taylor v. Friedman*, 344 Md. 572, 584 (1997)("For the foregoing

reasons we conclude that the legislative history does not so clearly demonstrate a purpose

to limit the prohibition of § 12–121 to closing costs as to override the plain language of the

statute").

6.  Under Maryland law the inspection fees charged by Freedom to the mortgage accounts of

Named Plaintiff's and the putative class members' constitute "interest" as that term is

defined in COM. LAW § 12-101(e) and therefore also constitutes "usury" as that term is defined in COM. LAW § 12-101(k).

7. The Office of the Commissioner of Financial Regulation ('OFCR"), as the agency specifically authorized to enforce and regulate Maryland's mortgage lending laws, is entitled to deference for its interpretation of those laws. *Comm'r of Fin. Regulation v. Brown, Brown, & Brown, P.C.*, 144 A.3d 666, 675 (2016). Over the course of the former and current administration, OCFR's analysis of the core issue has not wavered and supports the position advanced by Ms. Grayson in this action (i.e. that Freedom as the successor assignee stands in the shoes of its assignor(s) and Freedom may not impose inspection fees pursuant to COM. LAW § 12-121) as evidence as follows:

   a. OCFR issued an Industry Advisory on January 7, 2014 informing its licensees, including Freedom, that it was not permitted to impose inspection fees on mortgage borrowers. A true and correct copy of the notice is attached as Exhibit A to this Complaint and is also publicly available at https://www.dllr.state.md.us/finance/advisories/advisory-nonjudicialevictions.pdf.

   b. On April 20, 2017 the OCFR issued a Summary Cease and Desist Order to Ocwen Loan Servicing LLC ("Ocwen") and its affiliates on various issues including Ocwen's unfair and deceptive practice, like the practices of Freedom subject to this action, which improperly assessed inspection fees against the accounts of borrowers in violation of COM. LAW § 12-121, including accounts of borrowers owned by others. *See* Ocwen C&D Order at ¶¶ 79-83. Ocwen recently agreed, on February 23, 2018, to a resolution of the OCFR C&D Order and agreed to reimburse borrowers for the improper assessment and collection of inspection fees

3

by: (i) cash refunds for fees paid, (ii) crediting accounts where the fee was assessed but not paid, and (iii) refunding interest incurred when Ocwen capitalized the illegal inspection fees onto borrowers' accounts as part of a modification that increased the unpaid principal balance. *See* Ocwen Settlement Agreement at ¶ 26 (available at https://www.dllr.state.md.us/finance/consumers/pdf/ocwencd.pdf).

8.        Finally, as a licensed, Maryland mortgage servicer/lender Freedom knowingly agreed to "a duty of good faith and fair dealing in communications, transactions, and course of dealings with a borrower in connection with the advertisement, solicitation, making, servicing, purchase, or sale of any mortgage loan." MD. CODE REGS. 09.03.06.20.

9.        Freedom has proximately caused damages and losses to the Plaintiff and the class members by assessing and demanding sums from Ms. Grayson and the putative class members which are not lawfully due. Also, Freedom has been unjustly enriched and it should not be permitted to retain the benefit of its illegal activities. Finally, Ms. Grayson and the putative class members are also entitled to statutory damages under Maryland law.

10.      Freedom has also acted unfairly and deceptively related to its unreasonable investigation of Ms. Grayson's request for information and notice of error to it pursuant to 12 U.S.C.A. § 2605 and its implementing regulations known as Regulation X. Specifically, Ms. Grayson sought information and notified Freedom of various errors related to the servicing of her mortgage loan, but instead of conducting a reasonable investigation or even addressing the requests for information and errors, Freedom responded with an incomplete, form response intended to conceal further its illegal mortgage servicing practices that have infected Ms. Grayson's loan and Freedom's unfair and deceptive practices (described *infra*). As a result of these activities and omissions, Freedom has

4

caused additional, individual damages and losses to Ms. Grayson who fears Freedom's improper mortgage servicing practices will cause her to lose her home and property. In addition, Freedom's misstatements, misrepresentations, and omissions related to its incomplete and improper response to Ms. Grayson's request for information and notice of error directly and proximately caused emotional distress of Ms. Grayson which has physically manifested by anxiety, frustration, and worry that Freedom will continue to botch the servicing of her mortgage loan and demand sums from her without any basis to do so. Since Freedom's sworn testimony in prior court proceedings (discussed *infra*) was knowingly false and misleading, Ms. Grayson's fears are reasonable since no reasonable person who believe that an entity like Freedom would so brazenly offer false testimony under the penalties of perjury and even when it was notified of its errors it would not correct the false testimony.

## II.   THE PARTIES

11.     Ms. Grayson is a resident of Baltimore County, Maryland and resides at her home and property commonly known as 6408 Gilmore Street, Baltimore, MD 21207 ("Grayson Property"). Her loan subject to these proceedings is a consumer loan. It is a loan primarily for personal, family or household purposes. Ms. Grayson is also the assignee of any and all legal claims that her mother, Sharia A. Linthicum, may have against Freedom related to the subject loan.

12.     Defendant Freedom is a mortgage lender and servicer, licensed by the State of Maryland (Lic. No. 3687), that regularly conducts business throughout the United States and in Maryland and Montgomery County. Freedom has acted as the mortgage servicer of the Named Plaintiff's Loan subject to this action which is insured by the FHA; Freedom

5

also acts as the mortgage servicer of the loans of the putative class members' represented by Named Plaintiff in this action. Freedom is responsible for the appointment of the substitute trustees from the firm of Buonassissi, Henning & Lash, P.C. to proceed toward foreclosure on its behalf against Ms. Brooks and the Grayson Property; Freedom is also responsible for the appointment of other agents to proceed toward foreclosure on its behalf against the putative class members. Freedom's Executive Officers/Director/Owners include: Michael Paul Patterson, Richard F. Jordan, Steven Molitor, Cynthia Ann Berman, and David Firestone.

13. Not named as a party to this action the firm of Buonassissi, Henning & Lash, P.C. and its attorneys and staff act as debt collectors on behalf of Freedom. However, Buonassissi, Henning & Lash, P.C. is, upon information and belief, not licensed as a collection agency under Maryland law and is not otherwise exempt from such licensure since it uses non-attorneys related to its collection activities. This belief is based on a search of the NMLS online database. Buonassissi, Henning & Lash, P.C.'s employees also act as authorized, appointed agents, i.e. Substitute Trustees, on Freedom's behalf in foreclosure litigation throughout the State of Maryland.

## III.   JURISDICTION AND VENUE

14.   Declaratory and injunctive relief are available pursuant to Md. Code Ann., §§ 3-401 – 3-415, and Rule 2-231 (b)(2).

15.   Venue in this Court is proper in that the Defendant transact business within Montgomery County in relation to Montgomery County residents as part of its debt

collection/mortgage servicing practices and includes conduct complained of which occurred in Montgomery County, Maryland.

16.     This Court has equitable jurisdiction over the claims asserted herein. 9 M.L.E. Equity § 2.

17.     This Court has jurisdiction of this matter pursuant to Rule 2-231 in order to facilitate management of multiple similar claims.  Maryland law does not permit class actions to be maintained in the District Court of Maryland.

## IV.   FACTS RELATED TO MS. GRAYSON & DEFENDANT

18.     On or about May 31, 2013, Ms. Grayson acquired the Grayson Property.  To facilitate that acquisition she was approved for and obtained a mortgage loan advanced by Homestead Funding Corp. to Ms. Grayson and her mother ("Grayson Loan").  Thereafter, the Grayson Loan was assigned and/or transferred to Freedom.  The Grayson Loan is secured by a deed of trust on the Grayson Property which is Ms. Grayson's primary residence.

19.     Ms. Grayson's husband subsequently had a reduction of income to contribute to the household expenses including toward the monthly payments owed on the Grayson Loan. Ms. Grayson attempted to mitigate the situation by responding to Freedom's invitations to apply for loss mitigation but Freedom failed to disclose to her that she was not eligible for loss mitigation until long after she relied upon its representation(s).  Throughout the intervening period where Freedom concealed from Ms. Grayson the true facts, Freedom churned Ms. Grayson's mortgage account with late fees and foreclosure costs which could have been avoided if it had properly dismissed material facts.  Freedom elected to conceal

7

the true facts however to add on late fees and other charges to maximize its profits without any concern that Ms. Grayson know the true facts.

20.     Beginning in August 2016 Ms. Grayson sought to mitigate her mortgage situation with Freedom and in reliance to its representations to her applied for loss mitigation assistance. From August 2016 through December 2016, Ms. Grayson was not assigned a single point of contact for her loss mitigation efforts and Freedom slow-walked and otherwise improperly churned repetitive supplements for her loss mitigation application. The unreasonable process Freedom caused Ms. Grayson to engage in this time period was exemplified as follows:

    a.  Freedom's customer service department represented that all calls were recorded and the information discussed with Ms. Grayson were otherwise recorded. However, Freedom did not allow its customer representatives to access these records on a routine basis since Ms. Grayson would call every couple of days to check on the status of things and representatives from day to day had no idea what had been previously discussed with Ms. Grayson.

    b.  Ms. Grayson wrote letters to Freedom complaining about the unsafe and unsound customer service but it never responded to her.

    c.  Every thirty days or so, Freedom would send form correspondence to Ms. Grayson claiming that she had not submitted all the necessary documents to it as part of its her application but it never identified what documents were allegedly missing. This is Freedom's normal unfair and deceptive practice as demonstrated in multiple actions and complaints against it.

8

21.     Notwithstanding its false, conclusory statements to the contrary, Ms. Grayson had

from August 2016 through December provided Freedom with all the documents required

for her loss mitigation application and it was complete.  At each request for documents she

responded in reliance to Freedom's representations by providing the documents again and

again.  One set of these complete documents sent to Freedom occurred on November 8,

2016 and was sent by email to Freedom at the email address it identified to her for such

purposes (i.e. lossmitigation@freedommortgage.com) at 10:52PM.  Other submissions we

also made in the same form and manner to Freedom by Ms. Grayson on December 7, 2016

and December 10, 2016 in reliance to its representations to her that she might be eligible

for a loan modification.

22.     By the middle of December 2016, Freedom's authorized representatives disclosed

to Ms. Grayson in a recorded call that her application was complete and the "underwriting"

department now had the completed application and she would hear a response soon.  In

December 2016 she was also finally assigned a single point of contact at Freedom related

to her loss mitigation application. However, that person was only available to speak to Ms.

Grayson once and never returned tens of messages she left for him.

23.     In addition, Ms. Grayson attempted to reinstate her mortgage loan on multiple

occasions based on sums claimed due by Freedom to do so, but after relying on those

statements and making the payment requested, Freedom would advise it was not enough

and it otherwise applied the payment to sums not lawfully due and owing—including

applying it to inspection fees not lawfully due.

24.     On February 8, 2017, Freedom sent Ms. Grayson, with the intent that she and others

rely upon its representations, a Notice of Intent to Foreclose which represented to her that

9

the amount to cure her default on the Grayson loan was the sum of $3,436.24 "as of the Date of" the notice. However, that sum included fees and sums not legally due from Ms. Grayson since Freedom's accounting and business practices routinely divert borrower payments to sums not lawfully owed and those diversions create a cascade of other fees and costs claimed due by Freedom that would not have occurred but for Freedom's inability to properly service mortgage loans. This conclusion is based in part on Freedom's sworn testimony throughout various Maryland courts that it routinely charges borrowers sums it is not legally permitted to charge.

25.     On April 26, 2017, Freedom wrote to Ms. Grayson and claimed to her that her unpaid principal balance due on the Grayson Loan equaled $90,056.48. Freedom intended that Ms. Grayson rely upon this representation. However, as will be shown *infra*, the representation was materially false and misleading since Freedom claimed within weeks that it was owed other sums not lawfully due and far in excess of $90,056.48.

26.     On May 23, 2017, the employees of Buonassissi, Henning & Lash, P.C., acting as the appointed agents/substitute trustees on behalf of Freedom, commenced a foreclosure action against Ms. Grayson and the Grayson Property in the Circuit Court for Baltimore County (Case No. 03-C-17005001)("Grayson Foreclosure Action"). Freedom authorized the filing of this action and actively participated in it as follows:

   a. Freedom's authorized Foreclosure Specialist Erica D. Tracy sworn testimony dated May 16, 2017, under penalties of perjury, on behalf of Freedom that Ms. Grayson's total debt due included $55.00 in property inspection costs.

   b. Freedom's authorized Foreclosure Specialist Erica D. Tracy sworn testimony dated May 16, 2017, under penalties of perjury, on behalf of Freedom that the contents

10

of Freedom's Notice of Intent to Foreclose February 8, 2017 Notice of Intention to Foreclose was accurate.

    c. Freedom's authorized Foreclosure Specialist Erica D. Tracy sworn testimony dated May 16, 2017, under penalties of perjury, on behalf of Freedom that the Grayson Loan was owned by the Government National Mortgage Association ("GNMA").

27.    Freedom's sworn testimony described in the proceeding paragraph in the Grayson Foreclosure Action was knowingly false since:

    a. Freedom is not permitted to charge Ms. Grayson property inspection costs as a matter of law and all persons—including licensed mortgage lenders like Freedom— are expected to know the law and ignorance of the law is not an excuse;

    b. Freedom's assessment of Ms. Grayson's payments on the Grayson Loan to fees and costs not permitted under Maryland caused her payments to be improperly diverted and therefore the sum claimed due by Freedom in the February 8, 2017 Notice of Intent to Foreclose was not accurate; and

    c. GNMA does not own mortgage loans but simply insures them. *See e.g.* https://www.ginniemae.gov/about_us/who_we_are/Pages/funding_government_le nding.aspx. In addition, if GNMA actually were the owner of the Grayson Loan it should have been identified as a secured party on the February 8, 2017 Notice of Intention to Foreclose which is required to be accurate under Maryland law. REAL PROP. § 7-105.1(e)(1)(ii)(2)(B); *Shepherd v. Burson*, 427 Md. 541 (2012).

28.    Freedom's own sworn testimony in the Grayson Foreclosure Action was also materially inconsistent with its prior representations to Ms. Grayson. Specifically, Freedom's Jami Miller signed a sworn Preliminary Loss Mitigation Affidavit on behalf of

11

Freedom, dated May 16, 2017, which stated, under penalties of perjury, that Ms. Grayson was "not eligible until 11/28/17" to be considered for loss mitigation by Freedom. When Ms. Grayson was seeking loss mitigation assistance from Freedom as described in ¶¶ 20-25, *supra*, Freedom concealed this information from Ms. Grayson and actually represented to her over and over in writing and in her telephonic calls with its representatives that her application was pending and/or invited her to continue the application process. If she in fact was not eligible for a loan modification during that time period Freedom had a duty pursuant to its license to operate in Maryland and various statutory authorities cited herein to disclose the true facts to her but instead it chose to conceal this material information from Ms. Grayson and never disclosed it to Ms. Grayson until it commenced the foreclosure proceeding and served her with papers.

29.     But for Freedom's materially false and inconsistent sworn testimony described above it could not have caused the Grayson Foreclosure Action to be commenced through its appointed agents at the firm of Buonassissi, Henning & Lash, P.C. Now the improper filing of the Grayson Foreclosure Action, based upon Freedom's materially false and inconsistent sworn statements, will remain in the public records for the rest of time and cast Ms. Grayson in a negative light.

30.     To avoid the improper threat of Grayson Foreclosure Action, Ms. Grayson, with the assistance of her mother, reinstated the Grayson Loan and paid the sums claimed due by Freedom but did not concede that those claims were true and accurate. Included in the sums claimed due by Freedom was the sum of $55 for property inspections demanded in Freedom's Affidavit of Right to Foreclose and Statement of Debt presented in the Grayson

12

Foreclosure Action. Freedom accepted those sums and Buonassissi, Henning & Lash, P.C. caused the Grayson Foreclosure Action to be dismissed on July 11, 2017.

31.     Freedom charged Ms. Grayson, or her mother on her behalf, to pay a so-called convenience fee" of $15 for making partial payments payments over the phone. Freedom assessed these charge's to the account associated with the Grayson Loan on June 17, 2016, August 12, 2016, February 7, 2017, June 28, 2017, July 13, 2017, July 25, 2017, and September 14, 2017. In each of these instances, Ms. Grayson was making a partial, prepaid payment due on the Grayson Loan. But Freedom was expressly prohibited as a matter of Maryland law from assessing any "fee, premium, or other charge" for accepting by phone Ms. Grayson's partial, prepaid payments on her secured, mortgage loan. COM. LAW § 12-105(d).

32.     Still trying to investigate what exact fees Freedom was charging her account related to the Grayson Loan, Ms. Grayson wrote to Freedom on or about December 16, 2017 and requested "an itemized payoff statement of the total outstanding balance that would be required to pay [the] mortgage obligation in full as of January 2, 2018." Ms. Grayson also requested this information to determine what sum she might need to refinance to get away from Freedom as her mortgage lender since its accounting and servcing practices are simply unsafe and unsound and she does not want to be at risk of losing her home as a result of Freedom's illegal and unfair acts and omissions. Freedom received this request by certified mail on December 22, 2017 at 8:18AM at the address where it identified to Ms. Grayson and other borrowers it wished to receive such requests.

33.     In Ms. Grayson's December 16, 2017 payoff request she identified to Freedom certain charges on her mortgage account assessed on May 18, 2017 ($55.00) and August

13

14, 2017 ($15.00) and inquired as to what the fees were for and whether she was responsible for the fees.

34.        Freedom never provided Ms. Grayson with the itemized payoff statement.

35.        Ms. Grayson also wrote to Freedom on or about December 16, 2017 pursuant to 12 U.S.C. § 2605 and 12 C.F.R. § 1024.41, and 12 CFR Section 1024.35 requesting certain information and notified Freedom of certain errors it had committed on Mr. & Mrs. Hackett's mortgage account. Because of the materially, inconsistent statements made to her by its authorized representatives and its sworn testimony to the Circuit Court for Baltimore County by Jami Miller in the Preliminary Loss Mitigation Affidavit. Freedom received this request by certified mail on December 22, 2017 at 8:18AM at the address where it identified to Ms. Grayson and other borrowers it wished to receive such requests.

36.        Freedom acknowledged in writing Ms. Grayson's December 16, 2017 pursuant to 12 U.S.C. § 2605 and 12 C.F.R. § 1024.41, and 12 CFR Section 1024.35 in correspondence dated January 3, 2018.    It later provided a partial response to her inquiries in correspondence dated January 19, 2018. In its partial response to Ms. Grayson's December 16, 2017 correspondence to it pursuant to 12 U.S.C. § 2605 and 12 C.F.R. § 1024.41, and 12 CFR Section 1024.35, Freedom did not (i) provide copies of its audio calls between Ms. Grayson and Freedom's authorized representatives, (ii) answer Ms. Grayson's inquiry about why its representatives did not advise her and instead misled her to believe in 2016 through 2017 that she was eligible for loss mitigation/loan modification alternatives that she was not eligible for a loan modification until November 28, 2017, (iii) did not identify who the owner of her loan actually is since Ginny Mae is not an actual owner of mortgage

14

loans, and (iv) did not identify the basis of certain fees charged to her account as part of Freedom's mortgage servicing of the Grayson Loan.

37.     Because Freedom only provided a partial response to Ms. Grayson's December 16, 2017 correspondence pursuant to 12 U.S.C. § 2605 and 12 C.F.R. § 1024.41, and 12 CFR Section 1024.35, it conducted an unreasonable investigation and denied Ms. Grayson of her certain rights provided by Congress and the Consumer Financial Protection Bureau. As a direct and proximate result of Freedom's unreasonable investigation Ms. Grayson is worried that Freedom's mortgage servicing pattern and practice of charging fees and costs to her mortgage account not permitted under Maryland law will continue and her payments will not be applied correctly pursuant to Maryland law.

38.     On April 27, 2017, Mortgage Electronic Registration Systems, Inc. solely as nominee for Homestead Funding Corp., A Corporation, its successors and assigns, executed an assignment of the Deed of Trust securing the Grayson Loan to the Grayson Property. That assignment is recorded at Book 38959, Page 11 in the land records for Baltimore County, Maryland.

39.     The demand and claim for property inspection costs owed by Ms. Grayson was not accurate as these fees are not permitted under Maryland law. COM. LAW § 12-121(b); *Taylor,* 344 Md. at 584.

40.     At no time did Freedom ever provide Ms. Grayson with new TILA disclosures which were required pursuant to 12 C.F.R. § 226.18 when Freedom added amounts to the principal owed by Ms. Grayson on the Grayson Loan. *Travis v. Boulevard Bank N.A.*, 880 F. Supp. 1226, 1229–30 (N.D. Ill. 1995)("The court believes that the Defendant's purchase of the allegedly unauthorized insurance and the subsequent addition of the resulting

15

premiums to Plaintiff's existing indebtedness constituted a new credit transaction. Defendant's action involved augmenting Plaintiff's existing finance charge with an additional finance charge for the resulting premiums. This transaction required new disclosures under TILA. *See Bermudez v. First of America Bank Champion, N.A.,* 860 F.Supp. 580, 601 (N.D.Ill.1994) (concluding that 'the charge to plaintiffs' account [for the purchase of allegedly unauthorized insurance] could be found to be a finance charge subject to TILA disclosure requirements'); 12 CFR § 226.18 ('For each transaction, the creditor shall disclose ... [t]he finance charge.')'').

41.     By adding sums claimed to be due and owing from her on her loan, which are expressly prohibited under Maryland law, Freedom altered the terms of Ms. Grayson's loan.

42.     As a result of Freedom' knowingly improperly assessing property preservation charges against Ms. Grayson's mortgage account, Freedom has demanded she pay fees that are not permitted under Maryland law. COM. LAW § 12-121(b); *Taylor,* 344 Md. at 584. Freedom also required Ms. Grayson to pay these fees in order to reinstatement her mortgage in June 2017 even through it had no right under Maryland law to collect such fees.

43.     All persons, including licensed mortgage lender/servicers in the State of Maryland like Freedom, are expected to know the law. Charging unlawful fees to borrowers' accounts held by Freedom is unreasonable and Freedom should not be permitted retain the profits from such activities.

44.     On December 9, 2013, Freedom represented to the OCFC that its Maryland Mortgage Business included $407,628,999.00 in closed loans and another $711,160,407.00

16

in serviced loans.  There facts were verified by Maria Gallucci—Freedom's Corporate Secretary.

45.        The pattern and practice of Freedom's unsound and unsafe mortgage services practices has created a number of complaints against it in the public records of the OCFR including:

a.  OCFR Complaint #249 (Fiscal Year 2014) which concerned Freedom's bait and switch, high pressure tactics by churning unwanted and misleading calls on a Maryland consumer;

b.  OCFR Complaint #1051 (Fiscal Year 2014) which concerned Freedom's irregular claims of varied sums due on an FHA mortgage from a Maryland consumer;

c.  OCFR Complaint #2003 (Fiscal Year 2014) which concerned Freedom's failure to properly correct an error on a Maryland consumer's mortgage account and when it attempted to do so it misapplied the correct information which only compounded the problem;

d.  OCFR Complaint #1165 (Fiscal Year 2015) which concerned Freedom's failure to correct its false records which it transferred to another servicer which created a snowball effect and unfairly and deceptive infected a Maryland consumer's account;

e.  OCFR Complaint #753 (Fiscal Year 2017) describing Freedom's inability to response to consumer dispute letters, demanding sums on payoff statements which are not due, Freedom's failure to accept payments tendered to it timely causing increase interest to be due from the borrower and which concerned Freedom's failure to correct its false records which it transferred to another servicer which

17

created a snowball effect and unfairly and deceptive infected a Maryland consumer's account;

f.  OCFR Complaint #251 (Fiscal Year 2018) describing Freedom's failure to properly manage a Maryland consumer's escrow account; and

g.  OCFR Complaint #249 (Fiscal Year 2018) describing Freedom's failure to properly calculate a Maryland consumer's escrow account.

46.     Upon information and belief, based upon the experiences of the Plaintiff, described *supra,* and the following public facts and allegations, Freedom has a pattern and practice of noncompliance with the requirements of 12 U.S.C.A. § 2605 for borrowers like the Named Plaintiff and Class members:

a.  The well pled allegations of a Combined Counter and Third Party Complaint against Freedom filed in the matter of *O'Sullivan v. Brooks; Brooks v. Cantrell, et al.,* Case No. CAEF: 17-29187 (Cir. Ct. for Prince George's County, Maryland);

b.  The well pled allegations of a Complaint filed in the matter of *Ingram v. Freedom Mortgage Corporation,* Case No. 7:16-cv-01480 (U.S.D.C. Alabama, WD, September 8, 2016) which concerns and addressed violations of 12 U.S.C. § 2605 by Freedom).

c.  The well pled allegations of a verified Complaint filed in the matter of *Silva v. Freedom Mortgage Corporation, Case No. 3:16-cv-02636* (U.S.D.C. Texas, ND., September 14, 2016), which involves Freedom dual tracking loss mitigation applicants with threat of foreclosure when it had no right to do so.

d.  The well pled allegations of a Complaint now pending in matter of *Parker v. Freedom Mortgage Corporation,* Case No. 4:16-cv-00156 (U.S.D.C. Virginia, ED,

18

October 13, 2016) which concerns and addressed violations of 12 U.S.C. § 2605 by Freedom.

    e.   Over 900 consumer complaints against Freedom concerning its mortgage servicing practices subject to 12 U.S.C.A. §2605, including hundreds subject to and related to this claim and/or 12 U.S.C.A. §2605 are publically available as of this filing in the database of the Consumer Financial Protection Bureau at http://www.consumerfinance.gov/data-research/consumer-complaints/.

47.    The Court of Appeals in 2005 recognized that a real estate professional who had no direct communication with a borrower nevertheless had a duty to a consumer under the Maryland Consumer Protection Act and Maryland common law to make a "reasonable investigation" of the true facts in the real estate transaction on which the borrower (and other parties) would rely in order to complete the transaction. *Hoffman v. Stamper*, 385 Md. 1, 867 A.2d 276 (2005). This duty of care applies to Freedom as its work involves secured, consumer mortgage loans subject to Maryland laws including COM. LAW § 12-121. Freedom also knows as a matter of law that it obtains no greater rights in the loans it acquires than what its assignors had to give it. Its assignors were subject to COM. LAW § 12-121 and so too is Freedom accepting the assignments to it by the makers of the Grayson loan and the loans of the putative class members.

48.    Pursuant to 12 U.S.C.A. § 2605(k)(1)(C)(E), Freedom has duties to the Named Plaintiff and the putative class members to (i) take appropriate steps to avoid foreclosure as part of its standard servicer's duties and (ii) comply with any other obligation(s) found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of 12 U.S.C.A. § 2605. Pursuant to 12 C.F.R. §

19

1024.38(b)(1)(i), Freedom is required to "[p]rovide accurate and timely disclosures to a borrower as required by [12 C.F.R. § 1024.38] or other applicable law." Pursuant to 12 C.F.R. § 1024.35(b)(5), Freedom is not permitted to "impos[e]… a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower." It is unreasonable and a violation of its duties for Freedom to demand inaccurate sums due to it in the form of inspection fees which are barred by COM. LAW § 12-121, so-called convenience fees which are barred by COM. LAW § 12-105(d).

49.     The Maryland Mortgage Fraud Protection Act, MD. CODE ANN., REAL PROP. § 7-401, *et seq.*, establishes a statutory duty upon Freedom to disclose to mortgage borrowers and homeowners, like the Named Plaintiff and the putative class members in this action, to disclose material information with respect to the mortgage lending process which includes those fees and costs which it is permitted to charge borrowers. *Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 531 (D. Md. 2013); *Castle v. Capital One, N.A.*, No. CIV.A. WMN-13-1830, 2014 WL 176790, at *5 (D. Md. Jan. 15, 2014; *Stovall v. SunTrust Mortgage, Inc.*, No. CIV.A. RDB-10-2836, 2011 WL 4402680 (D. Md. Sept. 20, 2011). In this case, Freedom has duties to disclose to the Named Plaintiff and the putative class members that it was barred by Maryland law from charging property inspection fees and costs to their accounts but instead Freedom excluded and concealed this knowledge known to it from the Named Plaintiff and the putative class members to maximize its profits.

50.     Freedom's knowledge is also apparent from the standard and uniform Deed of Trust securing Freedom's interest in the homes and properties of the Named Plaintiff and putative Class Members, to which it claims to be the assignee standing in the shoes of the maker of

20

the loan, which provides clearly and unambiguously as follows, "this Security instrument is governed by Federal Law and the law of the jurisdiction in which the Property is located." Deed of Trust at ¶ 14.

51.     Still not having received any payoff statement in response to her request described in ¶¶ 32-34 *supra*, Ms. Grayson contact Freedom by telephone on or about March 21, 2018 and spoke to Freedom's authorized representative Krystal (ID No. 13364) to inquire why she had not received the payoff. Krystal explained to Ms. Grayson that she reviewed Freedom's records and did not see a payoff request from December 2017 (notwithstanding the fact that Freedom received the request by certified mail and the U.S. Postal Service Records show the request was delivered to Freedom) but did see a payoff request from May 2017.

52.     In the same communication discussed in the preceding paragraph, Krystal (ID No. 13364) offered to provide Ms. Grayson with a payoff statement and Ms. Grayson replied that she did. However, Krystal (ID No. 13364) explained that Freedom would require Ms. Grayson to pay the sum of $30 for the payoff request. Ms. Grayson asked Krystal (ID No. 13364) why Freedom charges for payoff requests and Ms. Grayson stated that she did not know the answer to that quested but did know that Freedom just did so as part of its routine practices. In reliance to Krystal's (ID No. 13364) statements Ms. Grayson agreed to pay the $30 for the payoff statement.

53.     Freedom was not permitted to impose a fee or other charge on Ms. Grayson to obtain a payoff statement for the purpose of determining what sum is necessary to prepay in whole or part her mortgage. COM. LAW § 12-105(d)("In connection with a mortgage loan, a lender may not require...the **imposition** of a penalty, **fee**, premium, or **other**

21

**charge** in the event the mortgage loan is prepaid in whole or in part" (emphasis added). Thereofre Freedom's requirement that she pay the $30 fee is a damage and loss to Ms. Grayson since Freedom had no right to impose and/or collect it.

54.     The Grayson Loan is not satisfied.

55.     Ms. Grayson has been damaged by Freedom's assessment and collection of fees and costs from her related to property inspections and so-called convenience fees for telephone payments. These payments are barred as a matter of Maryland law. COM. LAW § 12-121; COM. LAW § 12-105(d). The assessment and collection of these fees by these Freedom also constitutes crimes under Maryland law.

56.     As a direct and proximate result of Freedom's improper loss mitigation efforts and response to her December 16, 2017 correspondence pursuant to 12 U.S.C. § 2605 and 12 C.F.R. § 1024.41, and 12 CFR Section 1024.35, it has unfairly and deceptively infected Ms. Grayson's account and caused certain individual damages and losses including (i) economic damages equal to the time and expense incurred by Ms. Grayson to pursue loss mitigation options with Freedom when it knew she was not eligible but concealed the true and material facts from her and (ii) non-economic emotional distress damages manifested by frustration, worry, anxiety, and anger that despite acting responsibly to mitigate the situation, Freedom intended to simply charge her mortgage account with unnecessary law fees, costs, and other charges at its sole discretion without the right to do so and even go so far as to pursue foreclosure based upon knowingly, false testimony under penalties of perjury. Ms. Grayson is also entitled to damages for her individual claims.

V.     **CLASS ALLEGATIONS**

22

57.     This action is properly brought on behalf of a **State Law Class** under Rule 2-231.

Named Plaintiff proposes the **State Law Class** be defined as follows:

> Those persons in the State of Maryland for whom Freedom has acted as a
> mortgage servicer within the three years before the commencement of this
> action, and has charged their mortgage accounts with property inspection
> fees and costs.

58.     This action is also properly brought on behalf of a **Usury Inspection Fee Class**

under Rule 2-231. Named Plaintiff proposes the **Usury Inspection Fee Class** be defined

as follows:

> Those persons in the State of Maryland (i) for whom Freedom has acted as a
> mortgage servicer or mortgage loan owner and has charged their mortgage
> loan accounts with property inspection fees and costs and (ii) the mortgage
> loan accounts had not been satisfied more than six months before the
> commencement of this action.

59.     This action is also properly brought on behalf of a **Usury Convenience Fee Class**

under Rule 2-231. Named Plaintiff proposes the **Usury Convenience Fee Class** be defined

as follows:

> Those persons in the State of Maryland (i) for whom Freedom has acted as a
> mortgage servicer or mortgage loan owner related to a secured, mortgage
> loan, (ii) it charged their mortgage loan accounts with convenience fees for it
> accepting whole or partial payments; and (iii) the mortgage loan accounts had
> not been satisfied more than six months before the commencement of this
> action.

60.     This action is also properly brought on behalf of a **Payoff Fee Class** under Rule 2-

231. Named Plaintiff proposes the **Payoff Fee Class** be defined as follows:

> Those persons in the State of Maryland (i) for whom Freedom has acted as a
> mortgage servicer or mortgage loan owner related to a secured, mortgage loan, (ii)
> it imposed their mortgage loan accounts with fees or other charges for obtaining a

23

payoff statement; and (iii) the mortgage loan accounts had not been satisfied more than six months before the commencement of this action.

61.     The members of the **State Law Class, Usury Inspection Fee Class, Usury Convenience Fee Class**, and the **Payoff Fee Class** are capable of being identified without difficult managerial or administrative problems. Freedom tracks all information about correspondence sent to borrowers electronically and is able to identify particular categories of borrowers from its electronic systems. Freedom also utilizes standard forms and procedures related to the assessment of property preservation expenses.

62.     The **State Law Class, Usury Inspection Fee Class, Usury Convenience Fee Class**, and the **Payoff Fee Class** members are sufficiently numerous that individual joinder of all members is impractical. According to public records, Freedom has reported to the Office of the Commissioner of Financial Regulation that it is the servicer for hundreds of mortgage loans throughout the State of Maryland in the last three years preceding the commencement of this action.

63.     There are questions of law and fact common to the **State Law Class, Usury Inspection Fee Class, Usury Convenience Fee Class**, and the **Payoff Fee Class** which predominate over any questions affecting only individual members of the **State Law Class, Usury Inspection Fee Class, Usury Convenience Fee Class**, and the **Payoff Fee Class** and, in fact, the wrongs alleged against Freedom by the **State Law Class, Usury Inspection Fee Class, Usury Convenience Fee Class**, and the **Payoff Fee Class** members and the remedies sought by the **State Law Class, Usury Inspection Fee Class, Usury Convenience Fee Class**, and the **Payoff Fee Class** members against Freedom are identical, the only difference being the exact monetary sum to which each the **State Law Class,**

24

**Usury Inspection Fee Class, Usury Convenience Fee Class**, and the **Payoff Fee Class** member is entitled to receive from Freedom.

64.     The common issues related to the **State Law Class** members include, but are certainly not limited to:

    a.  Whether Freedom is entitled to demand property preservation and/or inspection fees on the mortgage accounts of the **State Law Class**;

    b.  Whether this Court may declare that Freedom' practices and policies concerning the assessment of property preservation fees against the mortgage accounts of the **State Law Class** members violate COM. LAW § 12-121(b) and *Taylor v. Friedman*, 344 Md. 572, 584 (1997);

    c.  Whether this Court may declare that Freedom' practices and policies concerning so-called convenience fees against the mortgage accounts of the **State Law Class** members violate COM. LAW § 12-105(d);

    d.  Whether Freedom threatened or took actions against the **State Law Class** members, including actions under the color of law or which were otherwise unfair and deceptive, that it had no right to take under state law;

    e.  Whether Freedom intended to defraud the **State Law Class** members by knowingly misrepresenting that it was entitled to assess property preservation or convivence fees against the mortgage accounts of the **State Law Class** members;

    f.  Do the inspection fees charges or the convenience fees by Freedom on the Named Plaintiff's' and **State Law Class** members' accounts constitute "interest" as that term is defined in COM. LAW § 12-101(e) and therefore also constitute "usury" as that term is defined in COM. LAW § 12-101(k); and

g. Whether Freedom should be ordered to disgorge money and profits that it has wrongfully collected based upon the improper assessment of property preservation, inspection costs, or convivence fees on the mortgage accounts of the **State Law Class** members since such fees are not permitted in Maryland.

65. The common issues related to the **Usury Inspection Fee Class** members include, but are certainly not limited to:

a. Whether Freedom is entitled to demand property preservation and/or inspection fees on the mortgage loan accounts of the **Usury Inspection Fee Class**;

b. Whether Freedom is entitled to demand property preservation and/or inspection fees on the mortgage loan accounts of the **Usury Inspection Fee Class** on its behalf or on behalf of another;

c. Whether this Court may declare that Freedom's practices and policies concerning the assessment of property preservation fees against the mortgage loan accounts of the **Usury Inspection Fee Class** members violate COM. LAW § 12-121(b) and *Taylor v. Friedman*, 344 Md. 572, 584 (1997);

d. Do the inspection fees charges by Freedom on the Named Plaintiff's and **Usury Inspection Fee Class** members' accounts constitute "interest" as that term is defined in COM. LAW § 12-101(e) and therefore also constitute "usury" as that term is defined in COM. LAW § 12-101(k); and

e. Whether Freedom is liable for statutory damages pursuant to the **Usury Inspection Fee Class** members pursuant to COM. LAW § 12-121(a)(1)(ii) for each instance in which Freedom has imposed upon the **Usury Inspection Fee Class** members.

26

66.     The common issues related to the **Usury Convenience Fee Class** members include, but are certainly not limited to:

    a.   Whether Freedom is entitled to convenience fees on the mortgage loan accounts of the **Usury Convenience Fee Class** members for accepting whole or partial payments from the class members by telephone;

    b.   Whether Freedom is entitled to demand convenience fees on the mortgage loan accounts of the **Usury Convenience Fee Class** on its behalf or on behalf of another;

    c.   Whether this Court may declare that Freedom's practices and policies concerning the assessment of convenience fees for accepting whole or partial payments against the mortgage loan accounts of the **Usury Convenience Fee Class** members violate COM. LAW § 12-105(d);

    d.   Do the convenience fee charges by Freedom the Named Plaintiff's and **Usury Convenience Fee Class** members' accounts constitute "interest" as that term is defined in COM. LAW § 12-101(e) and therefore also constitute "usury" as that term is defined in COM. LAW § 12-101(k); and

    e.   Whether Freedom is liable for statutory damages pursuant to the **Usury Convenience Fee Class** members pursuant to COM. LAW § 12-121(a)(1)(ii) for each instance in which Freedom has imposed improper convenience fees upon the **Usury Convenience Fee Class** members.

67.     The common issues related to the **Payoff Fee Class** members include, but are certainly not limited to:

a.  Whether Freedom is entitled to impose payoff fees on the mortgage loan accounts of the **Payoff Fee Class** members for providing payoff statements for the purpose of determining what sum is necessary to pay the loan in whole or in part;

b.  Whether Freedom is entitled to demand payoff fees on the mortgage loan accounts of the **Payoff Fee Class** on its behalf or on behalf of another;

c.  Whether this Court may declare that Freedom's practices and policies concerning the assessment of payoff fees for accepting whole or partial payments against the mortgage loan accounts of the **Payoff Fee Class** members violate COM. LAW § 12-105(d);

d.  Do the payoff fee or other charges by Freedom to Named Plaintiff's and **Payoff Fee Class** members' accounts constitute "interest" as that term is defined in COM. LAW § 12-101(e) and therefore also constitute "usury" as that term is defined in COM. LAW § 12-101(k); and

e.  Whether Freedom is liable for statutory damages pursuant to the **Payoff Fee Class** members pursuant to COM. LAW § 12-121(a)(1)(ii) for each instance in which Freedom has imposed improper convenience fees upon the **Payoff Fee Class** members.

68.     Named Plaintiff's legal and equitable claims are typical and the same or identical for each of the member of the **State Law Class, Usury Inspection Fee Class, Usury Convenience Fee Class,** and the **Payoff Fee Class** and will be based on the same legal and factual theories identified *supra.*

69.     Freedom's defenses (which defenses are denied) would be typical and the same or identical for each of the member of the **State Law Class, Usury Inspection Fee Class,**

**Usury Convenience Fee Class**, and the **Payoff Fee Class** and will be based on the same legal and factual theories.

70.     The Named Plaintiff will also fairly and adequately represent and protect the interests of the **State Law Class, Usury Inspection Fee Class, Usury Convenience Fee Class**, and the **Payoff Fee Class** members. Named Plaintiff has retained counsel experienced in consumer class actions including actions involving unlawful collection and mortgage servicing practices. Named Plaintiff does not have any interests which might cause her not to vigorously prosecute this action or are otherwise adverse to the interests of the members of the **State Law Class, Usury Inspection Fee Class, Usury Convenience Fee Class**, and the **Payoff Fee Class.**

71.     Certification of the **State Law Class, Usury Inspection Fee Class, Usury Convenience Fee Class**, and the **Payoff Fee Class** under Rule 2-231(b)(2) for the injunctive and declaratory relief sought and under (b)(3) for the damages claims in that common questions predominate over any individual questions and a class action is superior for the fair and efficient adjudication of this controversy. A class action will cause an orderly and expeditious administration of claims by the **State Law Class, Usury Inspection Fee Class, Usury Convenience Fee Class**, and the **Payoff Fee Class** members, and economies of time, effort and expenses will be fostered and uniformity of decisions will be insured.

72.     The only individual questions concern the identification of the **State Law Class, Usury Inspection Fee Class, Usury Convenience Fee Class**, and the **Payoff Fee Class** members who are entitled to any sums and profits that Freedom is ordered to disgorge as the fruit of its unlawful activities or share in any statutory and actual damages permitted

29

by law against Freedom. This information can be determined by a ministerial examination of the Defendants' business records or other sources, which are admissible as an exception to the hearsay rule and as a statement by a party.

73.       Named Plaintiff's claims are typical of the claims of the **State Law Class, Usury Inspection Fee Class, Usury Convenience Fee Class**, and the **Payoff Fee Class** members.

74.       Plaintiff will fairly and adequately protect the interests of all **State Law Class, Usury Inspection Fee Class, Usury Convenience Fee Class**, and the **Payoff Fee Class** members in the prosecution of this action. The Named Plaintiff is similarly situated with, and has suffered similar injuries as, the members of the **State Law Class, Usury Inspection Fee Class, Usury Convenience Fee Class**, and the **Payoff Fee Class** she seeks to represent. The Named Plaintiff (i) feels that she has been wronged, (ii) wishes to obtain redress of the wrong, and (iii) wants Defendant stopped from enriching itself from illegal fees or otherwise perpetrating similar wrongs on others.

75.       The **State Law Class, Usury Inspection Fee Class, Usury Convenience Fee Class**, and the **Payoff Fee Class** members have suffered damages, losses, and harm similar those sustained by the Named Plaintiff related to the putative class claims and described above.

## COUNT I

**(Individual and Class Declaratory Judgment and Injunctive Related to the Named Plaintiff and State Law Class, Usury Convenience Fee, and Payoff Fee Class Members' Mortgage Accounts)**

76.       Named Plaintiff incorporates the foregoing allegations.

30

77.     Named Plaintiff seeks a declaration on her individual behalf and on behalf of the **State Law Class** members that the Defendant Freedom is not entitled to charge and/or collect lender's inspection fees in connection with the loans of the **State Law Class** members and Named Plaintiff which are secured by residential real property. COM. LAW § 12-121(b). *See also Taylor v. Friedman*, 344 Md. 572, 584 (1997). Alternatively, Named Plaintiff seeks a declaration that Defendant Freedom is not entitled to the assistance of any Maryland court to enforce any claim lender's inspection fees in connection with the loans of the **State Law Class** members and Named Plaintiff which are secured by residential real property.

78.     Defendant Freedom should also be enjoined from attempting to charge, demanding and/or collecting lender's inspection fees in connection with the loans of the **State Law Class** members and Named Plaintiff which are secured by residential real property.

79.     Named Plaintiff also seeks a declaration on her individual behalf and on behalf of the **Usury Convenience Fee Class** that Freedom's practices and policies concerning the assessment of convenience fees for accepting whole or partial payments by telephone against the mortgage loan accounts of the **Usury Convenience Fee Class** members violate COM. LAW § 12-105(d).

80.     Defendant Freedom should also be enjoined from attempting to charge, demanding and/or collecting convenience fees for accepting whole or partial payments by telephone related to the loans of the **Usury Convenience Fee Class** members and Named Plaintiff which are secured by residential real property.

81.     Named Plaintiff also seeks a declaration on her individual behalf and on behalf of the **Payoff Fee Class** that Freedom's practices and policies concerning the assessment of

31

payoff fees for imposing and accepting fees against Maryland borrowers requesting payoff statements to determine what sums are necessary to prepay their mortgage in whole or part and whether such policies violate COM. LAW § 12-105(d).

82.       Defendant Freedom should also be enjoined from attempting to impose, charge, demanding and/or collect payoff fees or other charges fees from Maryland mortgage borrowers, including the Named Plaintiff and **Payoff Fee Class** members, requesting payoff statements of their loans secured by residential real property.

WHEREFORE, Named Plaintiff and **State Law Class, Usury Convenience Fee Class, and Payoff Fee Class** pray that this Court:

a.       Certify this case as a class action with the Named Plaintiff as class representative and her attorneys as class counsel on behalf of the **State Law Class, Usury Convenience Fee Class, and Payoff Fee Class** members described herein;

b.       Order and enter a declaratory judgment that Defendant Freedom is not entitled to demand, charge and/or collect lender's inspection fees in connection with the loans of the **State Law Class** members and Named Plaintiff which are secured by residential real property.

c.       Order and enter a declaratory judgment that Defendant Freedom is not entitled assess convenience fees for accepting whole or partial payments by telephone against the mortgage loan accounts of the **Usury Convenience Fee Class.**

d.       Order and enter a declaratory judgment that Defendant Freedom is not entitled assess or impose payoff fees or other charges fees for providing payoff statements to the **Payoff Fee Class** for the purpose of determining what sums are necessary

to pay their loans in whole or in part.

e.     Order appropriate injunctive relief against Defendant Freedom to prevent further violations of law or providing benefits to each from its illegal assessments of inspection fees upon the Named Plaintiff and **State Law Class** members, including a preliminary and permanent injunction;

f.     Order appropriate injunctive relief against Defendant Freedom to prevent further violations of law or providing benefits to each from its illegal assessments of convenience fees on the Named Plaintiff and **Usury Convenience Fee Class** members for making partial or whole payments by telephone, including a preliminary and permanent injunction;

g.     Order the Defendant Freedom to disgorge all inspection costs and fees it has collected from the Named Plaintiff and **State Law Class** members along with prejudgment interest on any amounts awarded to **State Law Class** members;

h.     Order the Defendant Freedom to disgorge all convenience fees it has assessed against the Named Plaintiff and **Usury Convenience Fee Class** members along with prejudgment interest on any amounts awarded to **State Law Class** members;

i.     Order the Defendant Freedom to disgorge all payoff fees or other charges it has assessed against the Named Plaintiff and **Payoff Fee Class** members along with prejudgment interest on any amounts awarded to **Payoff Fee Class** members;

j.     Alternatively, Order and enter a declaratory judgment that Defendant

33

Freedom is not entitled to the assistance of any Maryland court to enforce any claim lender's inspection fees in connection with the loans of the **Payoff Fee Class** members and Named Plaintiff which are secured by residential real property;

k.      Award reasonable attorney's fees, litigation expenses and costs;

l.      Order appropriate declaratory and injunctive relief; and

m.      Provide such other or further relief as the Court deems appropriate.

## COUNT II
### (Individual and Class Claim for Unjust Enrichment on behalf of the State Law Class and Named Plaintiff Against Freedom)

83.     Named Plaintiff incorporates the foregoing allegations. This claim for common law unjust enrichment is brought by Named Plaintiff on behalf of the **State Law Class** against Defendant Freedom.

84.     Defendant Freedom was not entitled to receive any benefit (including profits) or payments from the Named Plaintiff and **State Law Class** members because of any so-called property inspection fees or preservation fees assessed to or capitalized to the accounts of the Named Plaintiff and the **State Law Class** members. Notwithstanding this prohibition, Freedom has knowingly and willfully received and demanded benefits from its illegal and improper assessment and collection of such fees which is a crime under Maryland law. COM. LAW § 12-122.

85.     Maryland law recognizes that a claim for unjust enrichment is permitted in instances like this one where even though a claim may be covered by a contract between

34

the parties where (i) one party breaches the contract (by charging sums now lawfully charged), (ii) the contract does not fully address a subject matter such as one party's illegal, criminal activity or (iii) there is evidence of fraud or bad faith when a party acts contrary to the law. *Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 100 (2000).

86.      At all times relevant and material to this action in the three years before the commencement of this action, Freedom has known or should have known that is was not permitted to claim it was entitled to access or collect inspection fees from the Named Plaintiff and the **State Law Class** members since the class is clearly stated on this point and its own regulator has so instructed it.

87.      Due to its knowledge, as described above, Freedom had an appreciation that it was not entitled to receive the benefits it was collecting from the Named Plaintiff and **State Law Class** members that flow from the property inspection fees it assessed on their accounts.

88.      The acceptance and retention by Freedom of any sums received as a result of the illegal property inspection fees charged by it against the Named Plaintiff's and **State Law Class** member accounts under such circumstances is inequitable since Freedom did not have the legal right to even demand or collect such payments in the first instance in the manner it sought to collect them—this conclusion is just and proper even though Freedom might have otherwise collected the alleged fees in any other state since Maryland has for nearly two decades not permitted the assessment of such fees and Freedom was notified more than three years ago by its regulator that it was not entitled to charge such fees.

35

89.      The amounts accepted and charged by Freedom from the Named Plaintiff and the **State Law Class** members are liquidated amounts.

WHEREFORE, Named Plaintiff and **State Law Class** members pray that this Court:

a.       Certify this case as a class action with the Named Plaintiff as class representative and her attorneys as class counsel on behalf of the **State Law Class** members described herein;

b.       Grant a money judgment and order Defendant Freedom to disgorge and pay to the **State Law Class** members all amounts it has collected from the State Law Class members and the benefits it has realized as a result of collecting illegal fees in a sum in excess of $75,000.00;

c.       Award prejudgment interest on the amounts collected by Defendant Freedom;

d.       Award reasonable attorney's fees, litigation expenses and costs to the extent allowed by law; and

e.       Provide such other or further relief as the Court deems appropriate.

### COUNT III
**(Individual and Class Claim pursuant to the Maryland Consumer Debt Collection Practices Act, COM. LAW, § 14-201, *et seq.* ("MCDCA") and the Maryland Consumer Protection Act, COM. LAW § 13-301, *et seq.* ("MCPA") on behalf of the State Law Class members and the Named Plaintiff Against Freedom Concerning Freedom's Assessment of Illegal Inspection Fees)**

90.      Named Plaintiff incorporates the foregoing allegations. This claim for state statutory claims under the MCPA and MCDCA is brought by Named Plaintiff on behalf of the **State Law Class** against the Defendant.

36

91.     Defendant Freedom is engaged in the business of collecting consumer debts secured

by real property. In furtherance of that business Freedom claimed, directly and indirectly,

that she were entitled to assess, charge, and collect from the Named Plaintiff and the **State**

**Law Class** members property inspection fees or preservation fees related to the **State Law**

**Class** members' secured mortgage loans.

92.     Defendant Freedom knowingly claimed the right to such fees under the color of law

by threatening legal foreclosure based in part on the illegal fees when it knew it had no

right to do so.

93.     Freedom' acts as a debt collector violates COM.LAW § 14-202(8) which prohibits a

debt collector from making any "[c]laim, attempt, or threaten to enforce a right with

knowledge that the right does not exist."

94.     Freedom's claim that Named Plaintiff and the State Law Class members owe sums

for property inspection fees or preservation fees also violates COM.LAW § 14-202(8) when

the Defendant knows such fees are unlawful in Maryland.

95.     By threatening to commence foreclosure in the State of Maryland, which involves

Maryland court proceedings, and indicating that it has a right to collect inspectfion fees

from the Named Plaintiff and the State Law Class members based in whole or in part on

property inspection fees, Freedom has used communication in collecting or attempting to

collect a debt which improperly implies that the government or a government agency has

authorized the collection effort when the government has not done so in violation of COM.

LAW §14-202(9).

96.     The demands by Freedom for the improper inspection fees related to the Named

Plaintiff's and State Law Class members' loans secured by real property concern "real or

37

personal property, services, money, or credit for personal, family, or household purposes."
COM. LAW § 201(b).

97.    Freedom' actions in violation of the MCDCA also constitute a *per se* violation of
the MCPA pursuant to COM. LAW § 13-301(14)(iii).

98.    Named Plaintiff has have been damaged as described above.  The **State Law Class**
members have suffered similar damages.

WHEREFORE, Named Plaintiff and **State Law Class** Members pray that this Court:

a. Certify this case as a class action with the Named Plaintiff as class representative
and her attorneys as class counsel on behalf of the **State Law Class** members
described herein;

b. Grant a money judgment in favor of the Named Plaintiff and the **State Law Class**
members and against Freedom for violations of the MCDCA, as described herein,
in such amount as to be determined at trial and for purposes of a sum certain
directly related to improper assessment of inspection fees and costs by Freedom
against the Named Plaintiff and State Law Class members' mortgage loan
accounts, subject to further discovery as to the size of the class, the amount sought
on behalf of the class is in excess of $75,000.00;

c. Award reasonable attorney's fees, litigation expenses and costs pursuant to COM.
LAW § 13-408; and

d. Provide such other or further relief as the Court deems appropriate.

**COUNT IV**
**(Individual and Class Claim pursuant to COM. LAW § 12-121(a)(1)(ii) on**
**behalf of the Usury Inspection Fee Class members and the**
**Named Plaintiff Against Freedom)**

38

99.     Named Plaintiff incorporates the foregoing allegations. This claim for state statutory damages pursuant to COM. LAW § 12-121(a)(1)(ii) is brought by Named Plaintiff on behalf of the **Usury Inspection Fee Class** against Defendant.

100.     Named Plaintiff incorporates the foregoing allegations. This claim for state statutory damages pursuant to COM. LAW § 12-121(a)(1)(ii) is brought by Named Plaintiff on behalf of the **Usury Inspection Fee Class** against Defendant Freedom.

101.     The OCFR has determined, under its authority as Maryland's regulator implementing Maryland mortgage lender laws, that mortgage servicers like Freedom may not violate COM. LAW § 12-121(b).

102.     As the owner and assignee of the Named Plaintiff's and **Usury Inspection Fee Class** members' loans, Freedom stands in the shoes of its assignor(s) (or their predecessors) who made the loans to the Named Plaintiff and **Usury Inspection Fee Class** members and has no greater rights as the assignee than the assignors (including those who made the loans). Freedom is therefore the maker of the Named Plaintiff's' and the **Usury Inspection Fee Class** members' by accepting the assignment of the loans and related deeds of trust. In other instances, Freedom is the original named lender and maker of certain putative class member loans.

103.     If the General Assembly had intended to exclude Freedom from liability pursuant to COM. LAW § 12-121(b), it knew how to do so but did not. *Compare* COM. LAW § 12-1026(b)(5)(i)(1)(exempting certain assignees of mortgage loans like Fannie Mae from other provisions); *Blackstone v. Sharma*, 161 A.3d 718, 727, cert. granted, , 170 A.3d 290 (2017)(recognizing that an entity not "explicitly exempt[ed]" from a statutory scheme

39

demonstrated that "the General Assembly expressed a clear intent to subject [the entity]" to the statutory scheme).

104.    COM. LAW § 12-121(b) prohibits a lender from imposing fees related to property inspection or so-called property preservation fees on the Named Plaintiff's and **Usury Inspection Fee Class** members after the origination of the subject loans. COM. LAW § 12-121(b) does not exempt Freedom from its express prohibition.

105.    Freedom was not entitled to charge to the mortgage loan accounts of the Named Plaintiff and **Usury Inspection Fee Class** members related to property inspections unrelated to the construction to a new home or repairs, alterations, or other work required by them.

106.    At all times relevant and material to this action, Freedom has known or should have known that it was not permitted to require the imposition of unauthorized inspection fees to the mortgage accounts of the Named Plaintiff and the **Usury Inspection Fee Class** members since all persons are expected to know the law.

107.    COM. LAW § 12-114(a)(1)(ii) provides that the Defendant shall forfeit to borrowers like the Named Plaintiff and **Usury Inspection Fee Class** Members the sum of $500 for any violation of the subtitle including COM. LAW § 12-121(b).

108.    The Named Plaintiff and **Usury Inspection Fee Class** members are entitled to the sum of $500 for each instance in which Freedom has imposed inspection fees against the mortgage loan accounts of the Named Plaintiff and the **Usury Inspection Fee Class** members in violation of COM. LAW § 12-121(b) whether the Named Plaintiff or **Usury Inspection Fee Class** members paid the assessment or not.

40

WHEREFORE, Named Plaintiff and **Usury Inspection Fee Class** members pray that this Court:

a.       Certify this case as a class action with the Named Plaintiff as class representative and her attorneys as class counsel on behalf of the **Usury Inspection Fee Class** members described herein;

b.       Grant a money judgment and order Defendant Freedom to forfeit and pay to the Named Plaintiff and the **Usury Inspection Fee Class** members $500 for each violation of COM. LAW § 12-121(b) and a total sum in excess of $75,000.00;

c.       Award prejudgment interest to the Named Plaintiff and **Usury Inspection Fee Class** members on the statutory damages she are entitled to receive;

d.       Award reasonable attorney's fees, litigation expenses and costs to the extent allowed by law; and

e.       Provide such other or further relief as the Court deems appropriate.

**COUNT V**

**(Individual and Class Claim pursuant to COM. LAW § 12-121(a)(1)(ii) on behalf of the Usury Convenience Fee Class members and the Named Plaintiff Against Freedom)**

109.       Named Plaintiff incorporates the foregoing allegations. This claim for state statutory damages pursuant to COM. LAW § 12-121(a)(1)(ii) is brought by Named Plaintiff on behalf of the **Usury Convenience Fee Class** against Defendant.

110.       Named Plaintiff incorporates the foregoing allegations. This claim for state statutory damages pursuant to COM. LAW § 12-121(a)(1)(ii) is brought by Named Plaintiff on behalf of the **Usury Convenience Fee Class** against Defendant Freedom.

41

111.    As the owner and assignee of the Named Plaintiff's and **Usury Convenience Fee Class** members' loans, Freedom stands in the shoes of its assignor(s) (or their predecessors) who made the loans to the Named Plaintiff and **Usury Convenience Fee Class** members and has no greater rights as the assignee than the assignors (including those who made the loans).    Freedom is therefore the maker of the Named Plaintiff's' and the **Usury Convenience Fee Class** members' by accepting the assignment of the loans and related deeds of trust.    In other instances, Freedom is the original named lender and maker of certain putative class member loans.

112.    If the General Assembly had intended to exclude Freedom from liability pursuant to COM. LAW § 12-105(d), it knew how to do so but did not.    *Compare* COM. LAW § 12-1026(b)(5)(i)(1)(exempting certain assignees of mortgage loans like Fannie Mae from other provisions); *Blackstone v. Sharma*, 161 A.3d 718, 727, cert. granted, , 170 A.3d 290 (2017)(recognizing that an entity not "explicitly exempt[ed]" from a statutory scheme demonstrated that "the General Assembly expressed a clear intent to subject [the entity]" to the statutory scheme).

113.    COM. LAW § 12-105(d) prohibits a lender from imposing fees related to a borrower's partial or full payment on the Named Plaintiff's and **Usury Convenience Fee Class** members after the origination of the subject loans. COM. LAW § 12-105(d) does not exempt Freedom from its express prohibition.

114.    Freedom was not entitled to require any charge to the mortgage loan accounts of the Named Plaintiff and **Usury Convenience Fee Class** members related to the borrower's partial or full payments on their loans.

42

115.    At all times relevant and material to this action, Freedom has known or should have known that it was not permitted to require the imposition of unauthorized 'convenience' fees to the mortgage accounts of the Named Plaintiff and the **Usury Convenience Fee Class** members who make partial or whole payments on their mortgage loans since all persons are expected to know the law.

116.    COM. LAW § 12-114(a)(1)(ii) provides that the Defendant shall forfeit to borrowers like the Named Plaintiff and **Usury Convenience Fee Class** Members the sum of $500 for any violation, including the assessment of so-called convenience fees for partial or whole payments made by telephone to it, of the subtitle including COM. LAW § 12-105(d).

117.    The Named Plaintiff and **Usury Convenience Fee Class** members are entitled to the sum of $500 for each instance in which Freedom has imposed fees against the mortgage loan accounts of the Named Plaintiff and the **Usury Convenience Fee Class** members in violation of COM. LAW § 12-105(d) whether the Named Plaintiff and **Usury Convenience Fee Class** members paid the assessment or not.

WHEREFORE, Named Plaintiff and **Usury Convenience Fee Class** members pray that this Court:

a.    Certify this case as a class action with the Named Plaintiff as class representative and her attorneys as class counsel on behalf of the **Usury Convenience Fee Class** members described herein;

b.    Grant a money judgment and order Defendant Freedom to forfeit and pay to the Named Plaintiff and the **Usury Convenience Fee Class** members $500 for each violation of COM. LAW § 12-105(d) and a total sum in excess of $75,000.00;

43

c.     Award prejudgment interest to the Named Plaintiff and **Usury Inspection**

**Fee Class** members on the statutory damages she are entitled to receive;

d.     Award reasonable attorney's fees, litigation expenses and costs to the

extent allowed by law; and

e.     Provide such other or further relief as the Court deems appropriate.

### COUNT VI

**(Individual and Class Claim pursuant to the Maryland Mortgage Fraud
Protection Act, Real Prop. § 7-401, *et seq.* ("MMFPA") on behalf of the
State Law Class members and the Named Plaintiff Against Freedom)**

118.     Named Plaintiff incorporates the foregoing allegations. This claim for state

statutory claims under the MMFPA is brought by Named Plaintiff on behalf of the **State**

**Law Class** against Freedom.

119.     The MMFPA, REAL PROP. § 7-401, *et. seq.*, governs the relationship

between Freedom on the one hand and the Named Plaintiff and the **State Law Class**

members on the other.

120.     REAL PROP. § 7-401(c) provides: "'Homeowner' means a record owner of

residential real property." The Named Plaintiff and the **State Law Class** members are the

record owners of the real properties in question and are therefore Homeowners entitled to

the protections of the MMFPA.

121.     REAL PROP. § 7-401(e) provides: "Mortgage lending process... include[s]

[t]he solicitation, application, origination, negotiation, servicing, underwriting, signing,

closing, and funding of a mortgage loan."

44

122.          FIN. INST. § 11-501(l) provides: "'Mortgage loan' means any loan or other extension of credit that is: (i) secured, in whole or in part, by any interest in residential real property in Maryland; and (ii) for personal household or family purposes, in any amount."

123.          The MMFPA works to protect the interests of all parties to mortgage transactions in Maryland from misstatements, misrepresentations and omissions. In this instance, the MMFPA works to protect borrowers like the Named Plaintiff and **State Law Class** members from mortgage companies and so-called professionals like Freedom to ensure a level, fair playing field between all borrowers and professionals. For example, other mortgage professionals who do not access mortgage borrowers like the Named Plaintiff and the **State Law Class** members with inspection fees are harmed by Freedom' violations and false statements and omissions made herein just as the Plaintiff is harmed. In other words, honest mortgage professionals who follow the law are harmed by Freedom's improper assessment and collection of fees and costs she are not entitled to under Maryland law.

124.          Named Plaintiff and the **State Law Class** members are homeowners in the Mortgage Lending Process as defined by the MMFPA since the actions in dispute in this lawsuit involve the negotiation and servicing of residential mortgage loans with Freedom.

125.          REAL PROP. § 7-401(d) provides: "Mortgage fraud" means any action by a person made with the intent to defraud that involves:

> Knowingly making any deliberate misstatement, misrepresentation or omission during the mortgage lending process with the intent that the misstatement, misrepresentation or omission be relied on by a mortgage lender, borrower or any other party to the mortgage lending process;

45

Knowingly using or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;

Receiving any proceeds or any other funds in connection with a mortgage closing that the person knows resulted from a violation of [§ 7-401(d)(1) or (2)];

Conspiring to violate any provisions of [§ 7-401(d)(1), (2), or (3)]…

126.    Freedom's knowing conduct and intention to defraud Named Plaintiff and the **State Law Class** members (and the public) is demonstrated by its: dishonest statements and omissions and willful refusal to know the true facts exemplified *supra.*

127.    Freedom's intent to defraud the Named Plaintiff and the **State Law Class** members is also exemplified by its reckless disregard to the express prohibition of the assessment of property inspection fees under long-standing Maryland law.

128.    As a result of Freedom' knowingly deceptive and untrue communications and misstatements and omissions, Named Plaintiff and the **State Law Class** members have suffered economic and noneconomic damages described *supra.*

WHEREFORE, Named Plaintiff and **State Law Class** Members pray that this Court:

a.  Certify this case as a class action with the Named Plaintiff as class representative and her attorneys as class counsel on behalf of the **State Law Class** members described herein;

b.  Grant a money judgment in favor of the Named Plaintiff and the **State Law Class** members for violations of the MMFPA, as described herein, in such damage amount as to be determined at trial and for purposes of a sum certain directly related to the of

46

a sum certain directly related to improper assessment of inspection fees and costs by Freedom against the Named Plaintiff and State Law Class members' mortgage loan accounts by Freedom against the Named Plaintiff and State Law Class members, subject to further discovery as to the size of the class, the amount sought on behalf of the class is in excess of $75,000.00;

c.  Grant a further money judgment for statutory damages to the Named Plaintiff and the State Law Class members pursuant to REAL PROP. § 7-406(c) against Freedom;

d.  Award reasonable attorney's fees, litigation expenses and costs pursuant to REAL PROP. § 7-406(b); and

e.  Provide such other or further relief as the Court deems appropriate.

**COUNT VII**
**(Individual Claim pursuant to the Maryland Consumer Debt Collection Practices Act, COM. LAW, § 14-201, *et seq.* ("MCDCA") and the Maryland Consumer Protection Act, COM. LAW, § 14-201, *et seq.* ("MCPA") on behalf of the Named Plaintiff Only Against Freedom Only Concerning Its Improper Loss Mitigation Practices Concerning the Plaintiff's Loan)**

129.    Named Plaintiff incorporates the foregoing allegations. This claim for state statutory claims under the MCPA and MCDCA is brought by Named Plaintiff on her behalf individually against the Defendant Freedom concerning its loss mitigation practices related to her loan.

130.    The mortgage servicing and threats of foreclosure practices as set forth herein of Freedom against the Plaintiff are governed by the Maryland Consumer Protection Act, COM. LAW § 13-101 *et. seq.* ("MCPA").

131.    Section 13-303 prohibits unfair or deceptive trade practices in the extension of consumer credit or collection of consumer debts. The servicing of a mortgage loan and

transfer of a mortgage loan to another based upon false and otherwise unfair and deceptive statements, representations, and omissions discussed herein involves both the extension of credit and the collection of debts.

132. The MCPA defines unfair or deceptive trade practices to include, inter alia, the following: (a) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers; and (b) Failure to state a material fact if the failure deceives or tends to deceive.

133. By engaging in the acts and omissions set forth above as concerning, by making the misrepresentations set forth above, and by failing to disclose truthful material response(s) related to Plaintiff's loss mitigation efforts, Freedom has committed unlawful or deceptive trade practices in violation of the MCPA. Sec. 13-301(1) and (3) and Sec. 13-303(4).

134. Alternatively to the violations of the MCPA described in ¶¶ 20-42, 51-53, Freedom's deception, fraud, false premise, misrepresentations, and knowing concealment and omission of material facts from the Plaintiff with the intent that she and others rely upon the same during the servicing and collection of her loan and related consumer services also violated Sec. 13-301(9).

135. Freedom's conduct, as set forth above, had the capacity, tendency or effect of deceiving Plaintiff, who in fact was deceived and misled, causing injury and loss through the unfair and deceptive acts and omissions discussed above which caused injury and losses. Further, Freedom's unreasonable investigation of Plaintiff's Notice(s) of Error to it

48

and request for an itemized payoff also constitute violate Sec. 13-301(1) and (3) and Sec. 13-303(4).

136.    Plaintiff's individual damages as alleged herein were proximately caused by Freedom's actions including damages for emotional distress and mental anguish suffered with or without accompanying physical injury as well as those damages described in ¶¶ 10, 56 above.

137.    Freedom also acted as a collector under the MCDCA by attempting to collect upon an alleged, Plaintiff's mortgage debt arising out of a consumer transaction—her mortgage loan used to acquire her home and Property for her family. COM. LAW §14-201(b).

138.    Freedom's attempt to collect against Plaintiff in a manner in which it knew it did not have the right to do by knowingly creating a pre-textual denial of her loss mitigation application violated the MCDCA.

139.    By violating Maryland laws and the Defendant's duties under Maryland law and by utilizing methods and means of collection not permitted by law or the relationship governing the parties, Freedom also violated the MCDCA. By such acts and omissions Freedom has claimed, attempted, or threatened to enforce a right with knowledge that the right does not exist, in violation of the MCDCA. COMM. LAW §14- 202(8).

140.    Plaintiff is therefore entitled to her damages and losses described *supra* which have proximately resulted from Freedom's actions in violation of the MCDCA. MD. CODE ANN., COM. LAW, § 14-203.

141.    Freedom's violations of the MCDCA, described herein, are also *per se* violations of the MCPA pursuant to § 13-301(14)(iii) of the Commercial Law Article.

142.    Plaintiff reasonably relied upon the material acts and actions of Freedom as described *supra*.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment pursuant to the MCPA and MCDCA in favor of Plaintiff individually and against Freedom as follows:

a.    Grant a money judgment in favor of the Named Plaintiff against Freedom for violations of the MCDCA and MCPA, as described herein, in such amount as to be determined at trial and for purposes of a sum certain directly related to improper loss mitigation and threats of foreclosure by Freedom against the Named Plaintiff in the sum of $35,000;

b.    Award reasonable attorney's fees, litigation expenses and costs pursuant to COM. LAW § 13-408; and

c.    Provide such other or further relief as the Court deems appropriate.

## COUNT VIII
### (Individual and Class Claim pursuant to COM. LAW § 12-121(a)(1)(ii) on behalf of the Payoff Fee Class members and the Named Plaintiff Against Freedom)

143.    Named Plaintiff incorporates the foregoing allegations. This claim for state statutory damages pursuant to COM. LAW § 12-121(a)(1)(ii) is brought by Named Plaintiff on behalf of the **Payoff Fee Class** against Defendant.

144.    Named Plaintiff incorporates the foregoing allegations. This claim for state statutory damages pursuant to COM. LAW § 12-121(a)(1)(ii) is brought by Named Plaintiff on behalf of the **Payoff Fee Class** against Defendant Freedom.

145.     As the owner and assignee of the Named Plaintiff's and **Payoff Fee Class** members' loans, Freedom stands in the shoes of its assignor(s) (or their predecessors) who made the loans to the Named Plaintiff and **Payoff Fee Class** members and has no greater rights as the assignee than the assignors (including those who made the loans). Freedom is therefore the maker of the Named Plaintiff's' and the **Payoff Fee Class** members' by accepting the assignment of the loans and related deeds of trust. In other instances, Freedom is the original named lender and maker of certain putative class member loans.

146.     If the General Assembly had intended to exclude Freedom from liability pursuant to COM. LAW § 12-105(d), it knew how to do so but did not. *Compare* COM. LAW § 12-1026(b)(5)(i)(1)(exempting certain assignees of mortgage loans like Fannie Mae from other provisions); *Blackstone v. Sharma*, 161 A.3d 718, 727, cert. granted, , 170 A.3d 290 (2017)(recognizing that an entity not "explicitly exempt[ed]" from a statutory scheme demonstrated that "the General Assembly expressed a clear intent to subject [the entity]" to the statutory scheme).

147.     COM. LAW § 12-105(d) prohibits a lender from imposing fees or other charges related to a borrower's partial or full payment on the Named Plaintiff's and **Payoff Fee Class** members after the origination of the subject loans. COM. LAW § 12-105(d) does not exempt Freedom from its express prohibition.

148.     Freedom was not entitled to require any charge or fees to the mortgage loan accounts of the Named Plaintiff and **Payoff Fee Class** members related to the borrower's request for a payoff statement to determined what partial or full sum is necessary to payoff their loans.

51

149.    At all times relevant and material to this action, Freedom has known or should have known that it was not permitted to require the imposition of unauthorized payoff fees or other charges to the mortgage accounts of the Named Plaintiff and the **Payoff Fee Class** members who make partial or whole payments on their mortgage loans since all persons are expected to know the law.

150.    COM. LAW § 12-114(a)(1)(ii) provides that the Defendant shall forfeit to borrowers like the Named Plaintiff and **Payoff Fee Class** Members the sum of $500 for any violation (including the assessment of so-called payoff fees or other charges to acquire a payoff statement to determine what sum is necessary to make a partial or whole payment on the loan) of the subtitle including COM. LAW § 12-105(d).

151.    The Named Plaintiff and **Payoff Fee Class** members are entitled to the sum of $500 for each instance in which Freedom has imposed fees against the mortgage loan accounts of the Named Plaintiff and the **Payoff Fee Class** members in violation of COM. LAW § 12-105(d) whether the Named Plaintiff and **Payoff Fee Class** members paid the assessment or not.

WHEREFORE, Named Plaintiff and **Payoff Fee Class** members pray that this Court:

a.      Certify this case as a class action with the Named Plaintiff as class representative and her attorneys as class counsel on behalf of the **Payoff Fee Class** members described herein;

b.      Grant a money judgment and order Defendant Freedom to forfeit and pay to the Named Plaintiff and the **Payoff Fee Class** members $500 for each violation of COM. LAW § 12-105(d) and a total sum in excess of $75,000.00;

52

c.      Award prejudgment interest to the Named Plaintiff and **Payoff Fee Class**

members on the statutory damages she are entitled to receive;

d.      Award reasonable attorney's fees, litigation expenses and costs to the

extent allowed by law; and

e.      Provide such other or further relief as the Court deems appropriate.

Respectfully Submitted,

Phillip R. Robinson
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD  20910
(301) 448-1304
phillip@marylandconsumer.com

*Counsel for the Plaintiff and Putative Class
Members Described Herein*

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury.

Respectfully Submitted,

Phillip Robinson

2018 MAR 29  PM 3:18

FILED
CLERK OF COURT
CLERK'S OFFICE
MONTGOMERY CO. MD.

54